```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
United States of America,            :
                                     :
                                     :   89 Cr. 836-02 (KTD)
        -against-                    :
                                     :        ORDER
Danilo Antonio Pena,                 :
                                     :
                Respondent.          :
                                     :
-------------------------------------X
```

KEVIN THOMAS DUFFY, U.S.D.J.:

Danilo Antonio Pena was convicted by a jury on March 21, 1990, of: (1) conspiracy to manufacture and possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 812, 841(a)(1), and 841(b)(1)(A); and two counts of (2) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841 (b)(1)(B), and 18 U.S.C. § 2. On June 12, 1990, I sentenced Pena to 360 months' imprisonment and five years' supervised release pursuant to the pre-November 1, 1989, United States Sentencing Guidelines (the "Guidelines").

Pena has filed the instant motion to reduce or modify his sentence pursuant to 18 U.S.C. § 3582(c)(2). Pena contends that his sentence should be reduced under either:

(1) the 2007 retroactive amendments to the Guidelines for offenses involving crack cocaine, U.S.S.G. §§ 2D1.1 n.10(D)(1); 1B1.10(a)(1); or (2) Amendment 484, id. at § 2D1.1 n.1. In the alternative, Pena requests an evidentiary hearing to determine whether the quantity of cocaine and cocaine base attributed to him for sentencing purposes was proper under Amendment 484. For the following reasons, I DENY Pena's motion in all respects.

First, Pena is not eligible for a sentence reduction pursuant to the Guidelines for offenses involving crack cocaine because the amendments do not lower the Guideline range applicable to him. See Revised Supplement to the Presentence Report ("PSR") (March 26, 2010); U.S.S.G. § 1B1.10(a)(2)(B); United States v. Cruz, 560 F. Supp. 2d 198, 200 (E.D.N.Y. 2008).

Second, Pena argues that he is entitled to a sentence reduction pursuant to Amendment 484 of the Guidelines, U.S.S.G. § 2D1.1 n.1. Amendment 484, states:

> "Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit

2

> laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

§ 2D1.1 n.1.

Pena contends that his Guidelines range and sentence should be reduced because the substances he was convicted of possessing and distributing and conspiring to posses and distribute, cocaine and cocaine base, were cut with mannitol, among other things, and were only on average 40% pure.  Thus, he argues, instead of the 2.4 kilograms of cocaine base that Pena speculates I used to calculate his sentence, only 40% of that, or approximately 935.2 grams, should have counted, yielding a Guidelines range of 235 to 293 months' imprisonment rather than the 292 to 365 months recited in his original PSR.

Pena's argument fails.  To begin, while Pena contends that the cocaine and cocaine base in his case were cut with mannitol, the evidence shows that the cocaine and cocaine base seized in this case were primarily cut with procaine. (Trial Tr. at 433.)  The government's expert testified credibly at trial that while procaine is not a controlled substance, it is a substance that looks like cocaine.  (Id.

3

at 436-37.)  The expert testified that procaine can also be cooked into a base form and smoked exactly like cocaine base. (Id. at 427-28, 433-37.)  In fact, he said that cocaine is often cut with procaine and the whole mixture is cooked into cocaine base and sold or smoked.  (Id. at 435-37.)  This is common because the two are chemically similar and indistinguishable to the eye, so dealers can spread the cocaine further.  (Id.)

A diligent search did not discover a case in which the Second Circuit has addressed this issue directly in the context of Amendment 484.  However, the court has held in a similar case decided subsequent to the adoption of Amendment 484 that the relevant inquiry is whether the components of the "mixture or substance" are "part of a useable and saleable narcotic mixture."  United States v. Coleman, 166 F.3d 428, 432 (2d Cir. 1999).  In so determining, the court recognized that Congress's intent was to punish offenders based on "the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level."  Id. (quoting Chapman v. United States, 500 U.S. 453, 461 (1991); see also United States v. Acosta, 963 F.2d 551, 554 (2d Cir. 1992). In Coleman, 166 F.3d at 432, the Second Circuit concluded that "the residual water contained in [the defendant's] crack

4

cocaine was part of a useable and saleable narcotic mixture," and was thus properly included in calculating the defendant's sentencing range.

Pena relies on a case from the Court of Appeals for the District of Columbia for the proposition that an evidentiary hearing is required to determine how much of a roughly equal mixture of cocaine and mannitol is capable of being smoked as cocaine base for sentencing purposes under Amendment 484. See United States v. Byfield, 391 F.3d 277, 281 (D.C. Cir. 2004) (Byfield I). In Byfield I, the D.C. Circuit remanded the case to the district court for an evidentiary hearing on whether a roughly equal mixture of cocaine base and mannitol can be used without first extracting the mannitol. Id. However, the court made a point to state that it was remanding the case because the government failed to offer any authority or evidence contradicting the defendant's contention that the cocaine base could not be used with the mannitol present. Id. at 280-81. In fact, the court in Byfield I suggested that all the government would need to provide at the hearing would be affidavits or testimony supporting the academic authorities it proffered on appeal that said the mixture would be useable. Id. at 281. On remand, following a hearing at which the defendant and the government presented expert testimony, the district court

5

determined that a mixture of 44% mannitol and 56% cocaine base would be useable. United States v. Byfield, No. 89-0322-01, 2006 U.S. Dist. LEXIS 53671, at *12 (D.D.C. August 3, 2006) (Byfield II). Consequently, the defendant's motion for a sentence reduction was denied.

Byfield I & II do not help Pena. In this case, the government's expert testified that the primary substance mixed with the cocaine and cocaine base was procaine, not mannitol, which is often mixed with and smoked in a base form just like cocaine base. (Trial Tr. 435-37.) Thus, there is already evidence in the record that the procaine need not be removed before the mixture could be used. So, under Amendment 484, an evidentiary hearing is not necessary, and no reduction in Pena's Guidelines range is warranted.

Furthermore, even if the procaine were extracted, which, once bonded with the cocaine and mixed with water, would be near impossible, (Trial Tr. 434-35), Pena was sentenced in accordance with U.S.S.G. § 2D1.4 n.2. That note provides for the consideration of financial and other records of the defendant when the amount of drugs seized does not reflect the scale of the offense. § 2D1.4 n.2. In sentencing Pena, I considered the quantity of "crudo" (uncooked) and "cocina" (cooked) cocaine and cocaine base recorded in a notebook in evidence at trial listing thousands of grams of "cocina"

6

attributable to Pena and his co-defendant in this case. Here, the quantity of drugs seized plus the amount of "cocina" recorded in the notebook, even if reduced to reflect the average 40% purity, well exceeds the threshold amount for an offense level of 36 under the Guidelines. Consequently, including the 2 level enhancement for Pena's leadership role in the conspiracy, his offense level would remain at 38, and his Guidelines range would not change.

Thus, Pena's § 3582 motion is DENIED in all respects.


SO ORDERED.

Dated:   New York, N.Y.
         August 1%, 2010

                                        KEVIN THOMAS DUFFY, U.S.D.J.

USDSDNY
DOCUMENT
ELECTRONICALLY FILED
DATE FILED: 8-26-10